In re John R. SHOLOS and Patricia I. Sholos, Debtors.

MELLON BANK, N.A., Plaintiff,

v.

John R. SHOLOS and Patricia I. Sholos, Defendants.

Bankruptcy No. 79–913.
Adv. No. 80–34.

United States Bankruptcy Court,
W. D. Pennsylvania.

May 22, 1981.

Donald R. Calaiaro, Pittsburgh, Pa., for defendants John R. and Patricia I. Sholos.

Gary Philip Nelson, Pittsburgh, Pa., for plaintiff Mellon Bank, N.A.

Gary L. Smith, Pittsburgh, Pa., trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

### I. FINDINGS OF FACT

The facts in this case are not in dispute. On November 14, 1979, John R. Sholos and Patricia I. Sholos filed a voluntary petition for bankruptcy under Chapter 7, Title 11 of the United States Code. The First Meeting of Creditors was then held on December 18, 1979.

Under Schedule A–2, debtors failed to list creditor, Mellon Bank, N.A. as a secured claim. Upon amendment by the debtors, Mellon Bank, N.A. (hereinafter referred to as "creditor") was listed as a secured claim in the approximate amount of $3,432.00 and as holding a 1977 Ford LTD motor vehicle as security. Debtors then listed the value of the 1977 Ford LTD as $3,700.00 on Schedule B–2 and exempted the motor vehicle in the approximate amount of $268.00 under Schedule B–4.

An order of discharge of the debtors was entered on January 21, 1980. A discharge hearing was scheduled for February 19, 1980, but due to the debtors' inability to attend, this discharge hearing was rescheduled for May 14, 1980.

On May 14, 1980 said discharge hearing was held in accordance with proper notice procedures, and all parties were present. At the time of the discharge hearing a dispute arose between the debtors and creditor concerning the execution of a reaffirmation agreement. Bankruptcy Judge Gerald K. Gibson requested stipulated facts and briefs.

Creditor argues in its brief that it proposed to debtors an agreement reaffirming an obligation on the purchase of a 1977 Ford LTD and, additionally, requested payment of a sum of money for attorney's fees and costs incurred by the creditor in protecting its interest in the motor vehicle. The creditor further argues that the debtors desired to reaffirm this obligation and agreed to reimburse for attorney's fees and costs which were incurred as a result of the legal action taken due to the debtors' bankruptcy. The creditor argues that it is entitled to reasonable attorney's fees and costs as part of the reaffirmed debt pursuant to 11 U.S.C. § 506(b) and requests relief from stay pursuant to 11 U.S.C. § 362(d)(1). (Actually, based on a previous relief from stay, an order of court granting relief from stay was entered on January 30, 1980.)

Debtors have agreed in part to the reaffirmation concerning the debt on the motor vehicle but are adverse to the inclusion of payment of reasonable attorney's fees and costs as part of the agreement.

### II. DISCUSSION

The issue raised by this controversy is: Should the court permit, as part of a reaffirmation agreement, a creditor to reduce to

a sum certain the amount of reasonable attorney's fees and costs, as provided in a secured note?

From the standpoint of an individual debtor, the primary purpose of filing a petition under the Bankruptcy Code is to relieve the honest debtor from the weight of oppressive indebtedness and to provide him with a "fresh start" from previous obligations and responsibilities. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). This is achieved by a discharge of the debtor's obligations.

To the extent that a debtor reaffirms debts he "undoes" the discharge of his personal obligation to pay. To insure that a debtor does not forfeit his basic rights without due knowledge of the consequences, the Bankruptcy Code establishes a strict procedure to obtain a valid reaffirmation. This procedure in 11 U.S.C. § 524(c) represents a compromise in Congress between those who would have outlawed reaffirmations entirely and those who wish to permit reaffirmation unencumbered by the bankruptcy laws. 124 Cong. Rec., H 11,097 (daily ed. Sept. 28, 1978); S 17,413 (daily ed. Oct. 6, 1978). When these provisions are complied with, the reaffirmation agreement will be enforceable under applicable nonbankruptcy law. The creditor and debtors in this controversy entered into negotiations for a reaffirmation agreement after the entry of an order of discharge but before discharge was granted so that the agreement would be enforceable if in compliance with 11 U.S.C. § 524(c). Under 11 U.S.C. § 524, a discharge hearing was held with the appropriate warnings. The Court informed the debtors that a discharge had been granted, but because a reaffirmation agreement had been entered into, the Court provided additional cautions to the debtors as outlined in 11 U.S.C. § 524(d)(1).

Because the debtors would be reaffirming a consumer debt under 11 U.S.C. § 101(7) which is not secured by real property, this court was required to inform the debtors of their right to discharge and was required to find either that (1) the agreement did not impose an undue hardship on the debtors or a dependent of the debtors, and is in the best interest of the debtors; or (2) that the

agreement was entered into in good faith in settlement of an action to determine the dischargeability of debt brought under 11 U.S.C. § 523, or that the agreement provides for redemption under 11 U.S.C. § 722. It is difficult to conceive of a reaffirmation agreement which is in the best interest of the debtors unless the property is worth more than the debt or the debt is in arrears and could be repossessed or if further credit would not be available to the debtors. Additionally, the court is urged to approve only those reaffirmation agreements which are in settlement of nondischargeable actions.

Under the Bankruptcy Code, a claim may be divided into its secured and unsecured parts with the secured claim equaling the value of the collateral securing the debt on the date the petition was filed. Reaffirmation of the secured portion would permit the debtors to redeem the collateral by paying its fair market value. The court is unlikely to consent to an agreement in which the debtors reaffirm any amount in excess of the value of the underlying collateral unless it also meets a best interest and undue hardship test.

11 U.S.C. § 506(a) provides that a claim secured by property (in which the estate has an interest under § 541) is a secured claim to the extent of the value of the secured creditor's interest in the property. Such claim is unsecured, however, to the extent that the value of the secured creditor's interest is less than the amount of such allowed claim. Thus, the creditor is secured to the extent of the value of the collateral and unsecured for the balance of the claim. Section 506(a) clearly states that the valuation method is to be determined in light of the purpose of that valuation and of the proposed disposition or use of the property.

The statutory language and legislative history of 11 U.S.C. § 506(b) is clear that the entitlement to interest and reasonable fees is subject to collectibility under local law. To the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of the claim, the secured claimant is entitled not only to interest but also to reasona-

ble fees, costs or charges set forth under the agreement, and this would include attorney's fees. 4 *Collier on Bankruptcy*, ¶ 506.05 (15th ed., 1979) at 506–10.

The cases are uniform in holding that the validity in bankruptcy proceedings of a provision in a secured note calling for attorney's fees presents a question of state law. *Manufacturers' Finance Co. v. McKey*, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935). The bankruptcy courts in the Commonwealth of Pennsylvania have consistently upheld the validity of such provisions:

> A secured creditor may look to his lien for payment of the interest specified in his security agreement, and also for payment of his costs and fees as specified therein.... Validity and enforceability of stipulations for attorney's fees is largely a matter of local law, but the reasonableness and enforceability in bankruptcy are matters of federal law. *In re Schrader Body, Inc.*, 315 F.Supp. 1349 (W.D.Pa. 1970).

█ A bankruptcy court, as a court of equity, may invoke equitable principles. However, there are limitations to the equitable principles, and these limitations are set forth in *Manufacturers' Finance Co. v. McKey, supra*, at 448, 55 S.Ct. at 447:

> The mere fact that a party is obliged to go into a federal court of equity to enforce an essentially legal right arising upon a contract valid and unassailable under controlling state law does not authorize that court to modify or ignore the terms of the legal obligation upon the claim, or because the court thinks that these terms are harsh or oppressive or unreasonable. A party may stand upon the terms of a valid contract in a court of equity as he may in a court of law.

█ That such a contract is "valid and unassailable under controlling state law" is established. In *Houghten v. Restland Memorial Park, Inc.*, 343 Pa. 625, 23 A.2d 497 (1942), the Supreme Court of Pennsylvania cited *Manufacturers' Finance* in allowing a claim in a state receivership proceeding, a $20,000.00 "bonus" note, to be given along with another note for $20,000.00, in return for a loan of $20,000.00, and said:

> In an action at law against the corporation the Houghtens would, by virtue of the statute, have the legal right to insist that the agreement and two notes be enforced strictly according to their terms, and they are not deprived of this right because, precluded by the appointment of a receiver for the corporation from proceeding at law, they are obligated to submit the determination of their claim to a court of equity. *Houghten v. Restland Memorial Park, Inc., supra*, at 635, 23 A.2d 497.

This is not to say, however, that the bankruptcy court need blind itself completely to the contract determination of attorney's fees. In the case of *In re Advance Printing and Litho Company*, 277 F.Supp. 101 (W.D.Pa.1967), the referee in his discussion referred to Pennsylvania Uniform Commercial Code, 12A P.S. § 2–302 relating to unconscionable contracts. The court there stated:

> This section permits a Court to refuse to enforce such a contract, or in certain situations to limit an unconscionable result. But it is clear that § 2–102 takes a security transaction without the scope of that article in the Code.... In view of the teaching of the *Manufacturers' Finance* case, it seems to this Court that the agreement between Advance and Rosenthal must be enforced according to its terms, that is, that the claim of Rosenthal for the unpaid balance must be allowed as a secured claim with interest and .... it seems clear that Rosenthal is entitled to reasonable counsel fees.

█ A stipulated amount for attorney's fees may be clothed with a rebuttable presumption of reasonableness, thereby making it incumbent on the party challenging such fees to show that the fee is unreasonable, unconscionable, or a contract of adhesion. It remains for the judgment of the bankruptcy court to award the proper amount under terms of reasonableness.

*In re Schrader Body, Inc., supra*, refers to *In re Ferro Contracting Co.*, 380 F.2d 116 (3rd Cir. 1967), in concluding that "no legal obstacle is evident in the case at hand to payment of the stipulated attorney's fees

for services rendered to NAC before and after the bankruptcy." But the court in *In re Schrader Body, Inc.*, goes further in stating:

> Nonetheless, the reasonableness of the fees was a matter to be determined by the experienced Referee who not only had firsthand knowledge of the disputes involved and all the factors necessitating services of counsel, but was also in the best position to judge the value of those services. The court is bound to accept the Referee's determination of the reasonable value of the services rendered unless it appears to be clearly erroneous or his discretion plainly abused, neither of which conclusions is apparent from the record.... The expertise and experience of the Referee is best relied upon to achieve uniformity in this type of bankruptcy problem, and to prevent an unjustifiable enrichment of one creditor over another. *In re Schrader Body, Inc., supra*, at 1352.

The question of whether this contract is an executory contract has arisen. In the case at bar, the contract between the seller and the debtors was a Pennsylvania Motor Vehicle Installment Sales contract. The terms of the contract granted to the holder of the note a security interest in the motor vehicle to assure payment of a portion of the purchase price. This security agreement was assigned for value to creditor who was obligated under the contract to finance the purchase price of the motor vehicle. Upon payment for and delivery of the motor vehicle to the debtors, the creditor completely performed its obligation under the contract and the installment contract in this case ceased to be executory for bankruptcy purposes. Thus, performance on one side of the contract was completed and the contract is no longer executory since a note is not usually an executory contract if the only performance that remains is repayment. H.Rep.No.95–595, 95th Cong., 2d Sess. (1977) at p. 347, U.S. Code Cong. & Admin.News 1978, p. 5787.

## III. CONCLUSION

The facts in this case do not indicate specific amounts due as reasonable attorney's fees. Unless the creditor desires to reduce the amount to a sum certain, the court cannot make a determination as to the reasonableness of the amount.

Reasonable attorney's fees would be due if the value of secured property was such that upon liquidation or valuation (under a § 506 hearing), they could be supported by the property. If the property was worth less than the debt due and attorney's fees could not be supported by the property, the court would find it difficult to determine in a reaffirmation hearing that this debt was in the best interest of the debtors.

When, as in this case, the creditor desires to impose attorney's fees as part of the reaffirmation, a determination is required to find that the attorney's fees are reasonable under the circumstances and that the property could support the debt.

Before a specific sum can be awarded as part of the reaffirmation hearing, an agreement is required to include specifically the amount of attorney's fees separate from the payoff amount. In addition, the market value of the motor vehicle is also required.