In re TRIANGLE EQUIPMENT CO., INC., Bankrupt.

George I. VOGEL, II, Trustee, Plaintiff,

v.

TRIANGLE EQUIPMENT CO., INC., et al., Defendants.

The BANK OF CHRISTIANSBURG, Plaintiff,

v.

TRIANGLE EQUIPMENT CO., INC., Defendant.

Bankruptcy No. 7–80–01040.
Adv. Nos. 7–81–0126, 7–80–0224.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 18, 1982.

**176**

William J. McGhee, Christiansburg, Va., for Bank of Christiansburg.

Thomas R. King, Jr., Asst. U.S. Atty., Roanoke, Va., Will E. McLeod, Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Arthur P. Strickland, Roanoke, Va., for Allied Products.

M. Lanier Woodrum, Roanoke, Va., for Cates Bldg.

Daniel R. Warman, Norfolk, Va., for Todd Farm Equipment.

David Mullen, Christiansburg, Va., for J.I. Case Co. and J.I. Case Credit.

James H. Fulghum, Jr., George I. Vogel, trustee, Roanoke, Va., for Triangle Equipment.

Donald B. Irons, Blacksburg, Va., Richard E. Viar, Roanoke, Va., for First Nat. Bank of Montgomery Cty.

Donald W. Huffman, Roanoke, Va., for J. Atkinson.

Mark M. Lawson, Bristol, Va., for Credit Alliance Corp.

Kendal O. Clay, Radford, Va., for Sperry-New Holland and H. Jackson Darst.

---

**MEMORANDUM OPINION**

TURK, Chief Judge.

This is an appeal from an Order of the bankruptcy court, entered April 9, 1982, 19 B.R. 381, by which that court awarded attorney's fees to appellant's attorneys in the amount of $2,500.[1] The court finds that the bankruptcy court applied an improper standard in awarding the fees, and, accordingly, vacates that Order and remands for additional consideration.

Appellant, the Bank of Christianburg, held two deeds of trust on land owned by the bankrupt. The deeds of trust represented first and third liens on the property. The First National Exchange Bank, appellee herein, held a second lien deed of trust on the same property. (The Internal Revenue Service held perfected junior federal tax liens on the same realty.)

On September 9, 1980, the Bank of Christianburg foreclosed on the subject property. The bankrupt filed a Chapter 11 petition on September 19. Ultimately, the bankruptcy proceedings were converted to liquidation proceedings under Chapter 7.

The bankruptcy court, by Order dated June 23, 1981, authorized appellant's indenture trustee to foreclose on the subject property,[2] and this he did. The sale yielded $330,000, which was sufficient to satisfy appellant's first lien deed of trust but none of the other encumbrances. The surplusage over the first lien deed of trust (which secured a debt of $267,308.88) was $62,-691.12.

The law firm of Craft & McGhee applied for compensation for services rendered as indenture trustee and as counsel for collection of the bankrupt's debt to appellant. The commission and disbursements due the law firm as indenture trustee, which the bankruptcy court allowed, totalled $16,500 and $16,641.75, respectively, for a total of $33,141.75. This left $29,549.37 for attorney's fees.

---

1. The bankruptcy court also awarded costs and commissions to appellant's attorneys in consideration of their duties as indenture trustees. Those rulings have not been appealed.

2. The indenture trustee under the first lien deed of trust, Mr. Craft, is a member of the law firm of Craft & McGhee, which also represented the bank in the collection stage of these proceedings. It is the compensation for the latter services that is at issue here.

The first lien deed of trust secured a promissory note for the principal of the debt with interest. The note provided, in part: "If this note is not paid at maturity and is collected by suit or attorney, the makers and endorsers hereof agree to pay, in addition to the amount of this note, twenty-five per centum hereof as an attorney's collection fee." Twenty-five per cent of the amount of the note would have totalled approximately $66,827; but of the sale proceeds only $29,549.37, or eleven per cent of the amount of the note, remained after satisfaction of the debt and indenture trustee compensation. Accordingly, the law firm claimed the $29,549.37.

The bankruptcy court rejected the law firm's application. The court held that "[t]he validity of attorneys' fees under the Code ... is a matter of federal bankruptcy law." Further, 11 U.S.C. § 506(b) allows the payment of *reasonable* attorney's fees, in accordance with the underlying agreement, out of the proceeds of the sale of the collateral. The court then noted that federal courts disagreed over the choice of law for determining "reasonableness," and cited *Mellon Bank v. Sholos,* 11 B.R. 782, 784–85, 8 B.C.D. 109, Bankr.L.Rep. ¶ 68,223 (CCH) (Bkrtcy.W.D.Pa.1981) (bankruptcy judge determines reasonableness) and *United Virginia Bank v. Virginia Foundry,* 9 B.R. 493, 497 (W.D.Va.1981) (state law applies).

The court then adopted the Western District of Pennsylvania's reasoning in the *Sholos* opinion and concluded that "the bankruptcy judge is eminently qualified to determine reasonableness in each case." *Opinion and Order* at 3. The court then ruled that the standard of reasonableness to be applied by courts sitting in the Fourth Circuit was that set forth in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), incorporating *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

Based on that standard, the court determined that $29,549 was not a "reasonable" attorney's fee. The court relied on the following factors: (1) that the law firm's ap-

plication was not sufficiently detailed to comply with Rule 219, Fed.R.Bank.P.; and (2) that collection efforts on the law firm's part were not substantial, and consisted only of filing and trying an adversary proceeding for relief from the automatic stay (which proceeding was consolidated with the trustee's proceeding to sell the property). Although the law firm made additional appearances in the court, this was in the capacity of counsel for the appellant as third, rather than first, lienor, in an attempt to defeat the second lien held by the appellee.

Accordingly, the court found that a reasonable fee, based on the complexity of the issues and the extent of the services rendered as counsel for the bank as first lienor, was $2,500.

■ It is clear that the bankruptcy court applied an incorrect legal standard in determining the award of attorney's fees. As this court held in *United Virginia Bank v. Virginia Foundry Co., Inc.,* the award of attorney's fees in a bankruptcy proceeding under a private agreement is a question of "the extent and nature of property rights" which is to be determined "in accordance with state rather than federal common law." 9 B.R. at 495. *See also In re Crafty Fox Ltd.,* 475 F.Supp. 634 (W.D.Va.1979). This result follows almost directly from *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (state law giving mortgagee the right to rents and profits after default, not federal rule of equity, applies in bankruptcy court).

■ Appellee First National Exchange Bank does not appear to contest the applicability of *Virginia Foundry.* Rather, appellee maintains that "the Court carefully considered the relationship of § 506(b) of the Code with the applicable State law ...," *Appellee's Brief* at 6, and that "the Court considered the law in the State of Virginia ...." *Id.* at 7.

The court cannot agree. The bankruptcy court considered no Virginia State cases in its opinion dealing with the reasonableness of attorney's fees pursuant to private

agreement. In fact, the court noted that "[u]nder ordinary, nonbankruptcy circumstances, a request for 11% attorneys' fees for collection of a note in default would not seem unreasonable." *Order and Opinion* at 4.[3] Apparently, the court felt that bankruptcy cases require a different rule. But this is inconsistent with *Butner,* which held that "federal bankruptcy courts should take whatever steps are necessary to insure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918.

The court obviously relied on federal common law in reaching its decision.[4] *Johnson v. Georgia Highway Express, Inc.* arose under Title VII of the federal Civil Rights Act of 1964, which Act specifically empowered the court to determine attorney's fees' reasonableness. 42 U.S.C. § 2000e–5(k). Similarly, *Barber v. Kimbrell's, Inc.,* in which this Circuit adopted the standards set forth in *Johnson,* arose under the Truth-in-Lending Act, which also explicitly provides that the court shall determine reasonable attorney's fees. 15 U.S.C. § 1640(a)(3). These cases obviously have no applicability when a judge is called on to enforce a provision for attorney's fees contained in a private contract. The court can discern no substantial federal interest to dictate a different result. *Butner,* 440 U.S. at 55, 99 S.Ct. at 918.

Appellee finally argues that the amount requested "is 'unreasonable' under any standard of reasonableness." *Appellee's Brief* at 8. Appellee has not briefed the court as to the law of Virginia in this regard, as has appellant. The better course is to remand this proceeding to the bankruptcy court so that it may consider the

services rendered by the law firm in the light of Virginia law.

Accordingly, the Order of the bankruptcy court shall be vacated and the case shall be remanded to that court, in an Order entered this date.

---

**3.** During oral argument, appellant's attorney expressed the opinion that this statement represented an explicit finding by the bankruptcy judge that the fee would be considered reasonable under State law, and that the bankruptcy judge's order can be reversed outright by this court rather than vacated and remanded. In light of the fact that the bankruptcy judge made no reference to any Virginia cases in making this statement, it was only dicta. The court concludes that the preferable course is to

vacate the order and remand this case for explicit consideration under State law.

**4.** The bankruptcy court has previously illustrated its hostility to the court's conclusion of law. *See Virginia Foundry,* 9 B.R. at 495 n. 2. Neither that court nor appellee, however, have brought any Fourth Circuit opinion to the contrary to this court's attention, and so it continues to adhere to its opinion as expressed in *Virginia Foundry* and *Crafty Fox.*