In re UNITED COMPANIES FINANCIAL CORPORATION, et al., Debtors.

Nos. 99–450(MFW) to 99–461(MFW).

United States Bankruptcy Court, D. Delaware.

Aug. 15, 2000.

Mark D. Collins, Deborah E. Spivack, Margreta M. Sundelin, Richards, Layton & Finger, Wilmington, DE, Counsel for Debtors.

Marcia L. Goldstein, Brian Rosen, Weil, Gotshal & Manges, LLP, New York City, Counsel for Debtors.

Hovsep and Setta Hovsepian, Bell Canyon, CA, Pro Se Claimants.

Theodore Gewertz, Chaim J. Fortgang, Richard G. Mason, Wachtell, Lipton, Rosen & Katz, New York City, Counsel for Official Committee of Unsecured Creditors.

William H. Sudell, Eric D. Schwartz, Morris Nichols, Arsht, & Tunnell, Wilmington, DE, Counsel for Official Committee of Unsecured Creditors.

Charles Campbell, Jeffery W. Cavender, Long, Aldridge & Norman, LLP, Atlanta, GA, Counsel for the Official Committee of Equity Security Holders.

Norman Pernick, Mark Minuti, Saul, Ewing, Remick & Saul LLP, Wilmington, DE, Counsel for the Official Committee of Equity Security Holders.

Frederic J. Baker, Daniel K. Astin, Philadelphia, PA, Office of U.S. Trustee.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before this Court is the Proof of Claim filed by Hovsep and Setta Hovsepian ("the Claimants"). United Companies Financial Corporation ("the Debtor") filed an Omnibus Objection to Proofs of Claim asserting that no amount is due on the claims of the Claimants and others. After a hearing held on April 28, 2000, and consideration of the evidence contained in the record, we allow the Claimants' claim in the amount of $2,162.50 for the reasons set forth below.

### I. BACKGROUND FACTS

On November 1, 1995, the Claimants voluntarily filed a petition under Chapter 7 of the Bankruptcy Code. A discharge was entered on March 5, 1996, by the United States Bankruptcy Court for the Central District of California. Pursuant to Section 524(c) of the Code, the Claimants reaffirmed the mortgage on their residence with Household Financial Services ("Household") in their Chapter 7 case. (Chapter 7 Individual Debtor's Statement of Intention.) In December of 1996, Household informed the Claimants that effective January 1, 1997, their mortgage loan was being transferred to the Debtor.

On March 1, 1999, the Debtor filed a petition for relief under Chapter 11 in this Court. Approximately 5,000 proofs of claim were filed in the Debtor's case, many by borrowers who erroneously assumed a proof of claim should be filed for the amount owed by them to the Debtor under their mortgage.

---

1. This Opinion Constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

The Claimants filed their proof of claim against the Debtor on September 28, 1999. The Debtor objected to the Claimants' claim asserting that nothing is due them according to the Debtor's records. At the hearing held on April 28, 2000, Setta Hovsepian appeared and asserted:

1. $150,000 is owed to them by the Debtor;

2. A complete refund of the late charges paid by the Claimants to the Debtor is required, totaling at least $17,979.92;

3. Damages for harassment and hardship are appropriate due to the Debtor's wrongful notice of foreclosure and lack of cooperation in any attempt to renegotiate the interest rate of the loan; and

4. Nothing is due to the Debtor because the Claimants filed their own bankruptcy petition.

We permitted Ms. Hovsepian to present evidence, including her records, in support of her assertions. She subsequently supplemented the record with a copy of the settlement sheet evidencing the refinance of her home and the pay-off of the Debtor's mortgage.

## II. *JURISDICTION*

This Court has jurisdiction over this Motion, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(A) and (B).

## III. *DISCUSSION*

### A. *Burden of Proof*

▉ The burden of proof for claims filed in bankruptcy cases rests on different parties at different times. Initially, the claimant must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is prima facie valid. *In re Allegheny International, Inc.,*

954 F.2d 167, 173 (3d Cir.1992). The burden then shifts to the objector to produce evidence sufficient to contest the validity of the prima facie claim. *Id.* Thus, the objector must provide credible evidence that negates at least one of the allegations necessary for the claim's legal sufficiency. *Id.* Finally, if the objector does provide such evidence, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174. The burden of persuasion is always on the claimant. *Id.* As stated by the Supreme Court in *Raleigh v. Illinois Dept. of Revenue,* "[W]e have long held the burden of proof to be a substantive aspect of a claim. That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." 530 U.S. 15, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000).

### B. *A Valid Lien Survives Bankruptcy Proceedings*

▉ The Claimants contend that the Debtor's attempt to foreclose on their home is a violation of the discharge order they obtained in their Chapter 7 case. However, a discharge in bankruptcy does not extinguish valid liens on property of a debtor. *Estate of Lellock v. Prudential Ins. Co. of America,* 811 F.2d 186, 189 (3d Cir.1987). Such a discharge extinguishes only "the personal liability of the debtor." 11 U.S.C. § 524(a)(1). It does not prevent a creditor from enforcing a valid lien on property existing prior to the time of the entry of the order for relief. *Noble v. Yingling,* 29 B.R. 998, 1001 (D.Del.1983). As provided in the Code, a creditor's right to foreclose on a mortgage survives, or passes through, the bankruptcy. 11 U.S.C. § 522(c)(2). Finally, a creditor holding a pre-bankruptcy lien need not file a proof of claim to preserve its status as a

secured creditor. *In re Andrews,* 22 B.R. 623, 625 (Bankr.D.Del.1982).

■ Consequently, the law is well established that the Claimants' bankruptcy filing and discharge had no effect on the Debtor's mortgage on their home. Therefore, the Debtor's lien on the Claimants' home survived their Chapter 7 discharge.

Furthermore, the Claimants' personal liability for the mortgage on their home also survived, because they reaffirmed the debt pursuant to section 524(c) of the Code. 11 U.S.C. § 524(c). *See, e.g., In re Sholos,* 11 B.R. 782, 784 (Bankr.W.D.Pa.1981).

Thus, the Claimants' assertion that they are entitled to the amount paid by them to satisfy the Debtor's mortgage on refinance has no basis in fact or law.

### C. *Truth in Lending Act*

#### 1. *Alleged Violations*

Although they did not cite to any legal basis for their claim, the Claimants did provide adequate evidence to support a contention that the Debtor violated the Truth in Lending Act (TILA). To accomplish the purpose of informing consumers of the true cost of credit, TILA and its implementing Regulation Z require lenders to disclose to consumers certain material terms clearly and conspicuously in writing, and in a form that the consumer may examine and retain for reference. 15 U.S.C. § 1638. Pursuant to TILA, material terms that must be disclosed by the lender to the borrower to create liability include the amount financed, annual percentage rate, payment schedule, and the amount charged for late payments. *Id.* at § 1638(a). Disclosures required under TILA must be provided before the transaction is consummated. *Id.* at § 1638(b)(1).

■ According to the evidence presented, both Household and the Debtor provided that mortgage payments were due on the first of each month. Both lenders charged a late fee (10% of the monthly payment). However, Household offered a *sixteen-day* grace period for late payments while the Debtor offered only a *ten-day* grace period. Nothing in the record shows that the Claimants were made aware of this change upon assignment of their loan in January of 1997. In fact, it appears from the·records that the Claimants continued to pay on or near the 16th of the month and complained to the Debtor about the late charges incurred. Since that change related to the payment schedule, a failure to disclose this change is material and a violation of TILA.

■ In *Barber v. Kimbrell's, Inc.,* the Supreme Court held that, once a violation has occurred, a court has no discretion but to award the statutory damages. 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). In fact, TILA allows a monetary recovery despite a lack of harm inflicted upon a borrower. *Cowen v. Bank United of Texas FSB,* 70 F.3d 937, 940 (7th Cir.1995). Therefore, "the statutory civil penalties must be imposed ... regardless of the ... belief that no actual damages resulted or that the violation is de minimis." *Zamarippa v. Cy's Car Sales, Inc.,* 674 F.2d 877, 879 (11th Cir.1982).

#### 2. *Statute of Limitations*

■ After reviewing the evidence, we find that on three separate occasions, the Claimants made monthly payments to the Debtor between the Debtor's ten-day grace period and· Household's original grace period of sixteen days. A late charge was assessed on each of these occasions. (Exhibit D–1.) The first and second TILA violations occurred on April 16, 1997, and November 14, 1997, respectively.

*Id.* The Debtor's Chapter 11 was not filed until March 1, 1999, and the Claimants' claim was not filed until September 28, 1999. Actions for TILA violations must be brought within one year from the date of the occurrence of the violation; however, if a TILA violation is raised as a recoupment defense to a claim, the time limitation does not apply. 15 U.S.C.A. § 1640(e). In order to maintain a TILA claim for recoupment, one must show that 1) the TILA violation and the debt are products of the same transaction, 2) the claim is asserted as a defense, and 3) the main action is timely. *In re Smith,* 737 F.2d 1549, 1553 (11th Cir.1984).

The Claimants filed their proof of claim on September 28, 1999, and raised their assertion of TILA violations at the hearing held on April 28, 2000. This was before their home was refinanced and their mortgage to the Debtor repaid. We, therefore, conclude that the claim was raised in defense of the Debtor's claim and the statute of limitations does not bar recovery for the earlier TILA violations.

### 3. *Calculation of Damages, Penalties*

 For each of the alleged late payments, the Claimants were charged a late fee of $521.50. This is recoverable. In addition, penalties are imposed by TILA. The statutory civil penalty for cases relating to a credit transaction secured by real property is not less than $200 nor greater than $2000. 15 U.S.C. § 1640(a)(2)(A)(iii). Damages are to be awarded for each transaction. *Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F.Supp. 1295, 1308 n. 24 (D.Del.1990). Therefore, the three separate TILA violations can warrant statutory damages between $600 and $6,000.

The records presented by the Claimants and the Debtor show that the Claimants consistently paid their mortgage beyond even the 16th of the month (often several months late). Thus, we conclude that the failure of the Debtor to advise the Claimants of the shortening of the grace period by 6 days had a de minimis effect on the Claimants. Therefore, we conclude that a penalty of $200 per violation is appropriate.

### D. *Other Alleged Claims*

The Claimants also asserted damages for failure of the Debtor to cooperate in the negotiation of a lower interest rate or the refinance of their mortgage. The Claimants' assertions on this point were vague and were credibly refuted by the Debtor's witness. There was no documentary evidence presented that the Debtor agreed to lower the interest rate on the loan or to change any of its terms. Nor is there any evidence that the Debtor interfered with the refinance of the Claimants' mortgage, other than to insist that its loan balance be paid in full. We conclude that the Claimants have failed to sustain their burden of proof on this point.

### IV. *CONCLUSION*

For the foregoing reasons, the Plaintiffs are awarded $600 in statutory damages, and $1,562.50 in late fees that were improperly assessed for a total claim of $2,162.50.